IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA PENSACOLA
DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,
v.                                                         Case Number: 3:14cr91/MCR

PAUL JOHN HANSEN,
    Defendant.
_____/

HANSEN'S MOTION TO DISMISS FOR FAILURE TO CHARGE
AN OFFENSE AND SUPPORTING MEMORANDUM OF LAW

      COME NOW Defendant, Pro Se, Paul John Hansen, by and through counsel, and pursuant to Rules 7(c) and 12(b)(3)(B) of the Federal Rules of Criminal Procedure, move to dismiss the superseding indictment for failure to charge an offense against the United States in Counts One, Two, and Four of the indictment. Accepting the allegations in the indictment to be true for purposes of this motion, defendants aver as follows:

FACTUAL BACKGROUND

      On or about November 2, 2006, a jury convicted defendant Kent Hovind (and his wife) of various violations of federal law related to the couple's failure to withhold payroll taxes and otherwise impairing and impeding the lawful function of the Internal Revenue Service ("IRS"). Superseding Indictment Introduction ("Intro.") at ¶ 1. Pursuant to this conviction, the jury unanimously found that $430,400 of Hovind's property was subject to forfeiture. Id. As a result

of this jury finding, this Court entered a Final Order of Forfeiture in the amount of $430,400.  Id. at ¶ 3.  Among the property subject to the forfeiture order, the United States filed its lis pendens on 10 pieces of real property.  Id.

Based on the Superseding Indictment, in or about June 2007, this Court entered an Order Forfeiting Substitute Property, including the 10 pieces of real property against which the United States had filed a memorandum of lis pendens.  Id. at ¶ 4.  Thereafter, one "E.H." and another "G.S." filed objections to the Government's lis pendens on the 10 pieces of real estate.  Id.

On or about October 2008, the United States filed a motion for summary judgment asking for authority to dispose of the real property to satisfy the $430,300 monetary judgment of forfeiture.  Id. at ¶ 5.  Then, on or about July 2009, this Court entered an Order granting the summary judgment motion, authorizing the United States to dispose of nine of the 10 pieces of real property subject to the order.            ¶ 6.  , the United States "initiated the process to sell the pieces of real property."  Id.

Beginning in or about June 2011, defendant Paul John Hansen "caused liens to be filed in the Escambia County Clerk of Court on the nine pieces of real property ordered forfeited by [this Court] in July 2009."  Id. at ¶ 8.  On or about September 19, 2011, defendant Hansen filed in the Escambia County Court a "document titled 'Quiet Title - Equitable Action,'" on the nine pieces of real property previously ordered forfeited by this Court.  Id. at ¶ 9.  Thereafter, this state civil action was removed to this Court and, on December 2011, the civil action was dismissed.  Id.

On or about March 26, 2012, the United States filed a complaint seeking an order from this Court "to declare the liens filed by defendant [Hansen] between June 2011 and September 2011 were null and void."  Id. at ¶ 10.  Additionally, the United States sought an injunction

directing that no further effort be made to take any action in the Escambia County Court to "cloud title of [five] remaining properties without first obtaining the advice of a licensed Florida attorney or an order from this Court." Id.

Soon thereafter, defendant Hansen attempted to file a civil action in this Court, but "[t]he documents and pleadings were rejected...." Id. at ¶ 11. Nevertheless, on June 11, 2012, the United States filed a Motion for Summary Judgment, and on or about June 27, 2012, this Court granted the motion, ruling that defendant Hansen's "liens were null and void." Id. at ¶¶ 12-13.

Between on or about April 10, 2013 and April 15, 2013, "G.S." caused a Claim of Lien Affidavit of Obligations to be mailed to, and delivered for, filing with the Escambia Clerk of Court, but "[d]ue to an insufficient amount of fees being submitted with the documents," the clerk returned the documents to defendant Hansen. Id. at ¶14.

Then, on or about May 19, 2013, defendant Hovind caused a letter to be mailed to "an agent of the United States, notifying the agent that Memoranda of Lis Pendens were going to be filed on four of the pieces of real property previously ordered forfeited by [this] Court. Id. at ¶ 16. Thereafter, on May 22, 2013, defendant Hansen caused the Claim of Lien Affidavit of Obligation to be mailed to "the real estate title attorney handling the real estate for the United States with regard to the properties previously ordered forfeited by [this] Court in or about June 2007." Id. at ¶ 17. Finally, on or about May 29, 2013, defendant Hovind caused documents titled Memorandum of Lis Pendens to be filed with the Excambia County Clerk of the Court on "four properties previously ordered forfeited to the United States...." Id. at ¶ 18.

On October 21, 2014, the Government filed a six-count indictment against Hovind and Hansen, charging violations of 18 U.S.C. § 401(3) (contempt of court) and of 18 U.S.C. §§ 1341

(mail fraud) and 1349 (conspiracy to commit mail fraud).  Docket No. 1.  On November 18, 2014, the Government filed a superseding indictment restating the same charges.  Docket No. 28.  On March 12, 2015 Hovind and Hansen were convicted by a jury of the three separate contempt charges under § 401(3), but the jury was unable to reach a verdict as to the mail fraud and conspiracy charges under §§ 1341 and 1349.  Docket No. 145.

CHARGES MADE IN COUNTS ONE, TWO AND FOUR

Count One of the Superseding Indictment charges that on or about June 1, 2011 and continuing to on or about July 1, 2013, Kent Hovind and Paul John Hansen "knowingly and willfully" conspired "to devise a scheme to defraud the United States and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises by the use of the United States Postal Service" in violation of 18 U.S.C. § 1349.  Superseding Indictment ("Indict.) at p. 6.   Counts Two and Four charge Defendants Hovind and Hansen with having violated 18 U.S.C. § 1341, alleging that on four separate occasions the two defendants "inten[ded] to defraud, devise and intend to devise a scheme to defraud the United States and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises related to a material fact."  Id. at pp. 8 and 10.  All three counts allege that the two defendants used the United States Postal Service "for the purpose of executing and in order to effect the scheme and artifice to obtain money."  Indict. at pp. 6-7, 8, and 10.  Count One, however, alleges that the purpose of the conspiracy scheme was not only to defraud the United States, but to "defraud others."  See Indict. at . 7.  Although Count One does not specify who those "others" might be, the Count does identify the items mailed to have been "various documents and pleadings which included, but were not limited to, the following: letters, liens,

Memoranda of Lis Pendens, and Claim of Lien Affidavit of Obligation with attachments." Id. at p. 7.

Likewise, Counts Two and Four of the Superseding Indictment charge the two defendants with having used the United States Postal Service to deliver certain legal papers. Id. at pp. 8 and 10. Count Two describes the papers to be "four Memoranda of Lis Pendens," one mailed on May 22, 2013 to the real estate attorney handling the real estate closings for the United States of four forfeited properties, and the other four Memoranda mailed on May 29, 2013 to the Escambia County Clerk. Id. at p. 8. See Intro. at ¶¶17-18. In Count Four, the legal paper is identified as a "Claim of Lien Affidavit of Obligation with attachments mailed on or about April 1 and 15, 2013. Indict. at pp. 9-10. See Intro. at ¶14.

## ARGUMENT

I.  UNDER UNITED STATES V. PENDERGRAFT, COUNTS ONE, TWO AND FOUR FAIL TO CHARGE AN OFFENSE UNDER 18 U.S.C. SECTIONS 1341 AND 1349.

   A.  The Indictment Fails to Charge a Scheme to Defraud the United States.

Like the indictment in United States v. Pendergraft, 297 F.3d 1198 (11th Cir. 2002), the indictment charges defendants Hovind and Hansen, "with mail fraud and conspiracy to commit mail fraud." Id. at 1208. Also, like Pendergraft, the papers involved are documents related to litigation, including court filings, the "[s]erving [of which] by mail is an ordinary litigation practice." Id. Further, like in Pendergraft where the indictment rested upon a charge of "intentional participat[ion] in a scheme to extort a monetary settlement [by] mail[] [of a motion with ... attached false affidavits in furtherance of that scheme" (id.), the indictment here is supported by allegations that Hovind and Hansen attempted by fraud and false pretenses to obtain

money and property by use of the mails to file groundless legal claims in the form of lis pendens, liens, and the like.

Citing to a number of district court opinions from several federal districts, the Pendergraft Court observed that "[a] number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility." Id. Although the U.S. Court of Appeals for the Eleventh Circuit declined to draw such a fixed policy line in Pendergraft, it nonetheless expressed concern that the mail fraud statute not be interpreted and applied in such a way as to permit "prosecuting litigation activities as federal crimes [lest it] undermine the policies of access and finality that animate our legal system." Id. In short, the Pendergraft Court warned that the legal sufficiency of a mail fraud charge based upon the use of the mails to serve legal papers in connection with ongoing litigation should be examined closely to ensure that the mail fraud statute is not being misused as a substitute for what would otherwise be a "malicious prosecution" claim. See United States v. Lee, 427 F.3d 881, 890 (11th Cir. 2005).

Likewise, this Court should guard against any Government attempt to misuse the mail fraud statute as a substitute for what would otherwise be a violation of 18 U.S.C. § 401(3), which prohibits "disobedience or resistance to [a federal court's] lawful writ, process, order, rule, decree, or command" — such as has been alleged in Counts Three and Five of the indictment in this case. According to the allegations of Count Three, on or about May 22, 2013 and May 29, 2013, defendant Hovind "did willfully and knowingly disobey and resist a lawful process, decree and command" of this Court (i) in the form of an Order Forfeiting Substitute Property dated June 28, 2007, and (ii) in the form of an injunction order dated June 27, 2012, forbidding Hovind from "taking ... further action to file or attempt to file any liens, notices, financing statements, and

claims of whatever nature with the Clerk of the Court and for Escambia County, or in any manner to cloud title on the properties" covered by this Court's orders. In Count Five Hansen is similarly charged with having violated 18 U.S.C. § 401(3), the criminal contempt statute.

Yet, in Counts Two and Four, defendants Hovind and Hansen are charged with having, between May 22 and May 29, 2013, and then again between April 1 and April 15, 2013, by use of the mails, executed a scheme to defraud the United States of its money by filing "four Memoranda of Lis Pendens" and a "Claim of Lien Affidavit of Obligation," both of which were forbidden by this Court's forfeiture order dating back to June 28, 2007. See Intro at ¶ 4. Indeed, in or about July 2009, this Court entered an order granting summary judgment in favor of the United States, authorizing the United States to sell the forfeited property. Although defendants Hovind and Hansen thereafter continued to assert ownership interests superior to the United States' interest in the forfeited property — by filing lis pendens and other liens against that property in both state and federal court — such filings could not have been calculated by either Hovind or Hansen to deceive the United States, for both defendants well knew that the United States would not believe Hovind's and Hansen's representations of continued ownership interests in the property covered by the 2007 and 2009 Orders of this Court. And as the Pendergraft Court observed, if one, such as Hovind or Hansen, knew that he could not deceive the United States, then "'there was no scheme to deceive,'" much less a conspiracy to deceive the United States, as charged in Counts One, Two, and Four of the indictment. See Pendergraft, 297 F.3d at 1209. See also Pelletier v. Zweifel, 921 F.2d 1465, 1499 (11th Cir. 1991); Norton v. United States, 92 F.2d 753, 755 (9th Cir. 1957).

As the 11th Circuit has ruled in Pendergraft, "absent an intent to deceive the victim, the

'mailing of litigation documents, even perjurious ones, did not violate the mail fraud statutes." See Raney v. All State Insurance Co., 370 F.3d 1086, 1088, n.2 (11th Cir. 2004). That same rule applies here, where the litigation documents sent by mail were found by this Court to be "null and void" and, therefore, without effect upon property found by this Court to be subject to forfeiture to the Government.

      B.      The Indictment Fails to Charge a Scheme to Defraud "Others."

In its superseding indictment, the Government revised the conspiracy charge to add that Hovind and Hansen not only conspired to devise and execute a scheme to defraud the United States, but "others." Not only does the indictment fail to name those others, but the persons who are named would fit into the same category as the United States – entities and persons who defendants Hovind and Hansen knew could not be deceived.

For example, Paragraph 16 of the indictment alleges that "Hovind caused a letter to be mailed and delivered to an agent notifying the agent that Memoranda of Lis Pendens were going to be filed on four of the pieces of real estate property ordered forfeited by the District Court. Intro. at ¶ 16. Whoever this unnamed agent may be, it appears that the mail was used to provide notice to the United States of an upcoming court filing. In Paragraph 17, Hansen is charged with having "caused the Claim of Lien Affidavit of Obligation ... to be mailed and delivered to the real estate attorney handling the real estate closings for the United States with the properties previously order forfeited by [this Court] in or about June 2007." Intro. at ¶ 17. Again, the mail supposedly was being used to effect a scheme to defraud the United States, not to defraud a real

estate attorney representing a potential buyer of the forfeited property.[1]  As agents of the United States, these unnamed individuals would stand in the shoes of the United States.

Indeed, "as an experienced attorney," the Government's closing agent must have known that the claimed lis pendens and other liens were "unenforceable."  See Pelletier, 921 F.2d at 1507.  And there is nothing in the indictment to indicate that Hovind and Hansen filed their court papers with any expectation that, in reliance upon their representations of ownership, either agent would have taken action that would have resulted in the loss of property or money to the United States.  See Pelletier, 921 F.2d at 1499.

Neither has this standard been met with respect to Hovind's and Hansen's use of the mails to file legal documents with the Escambia County Court.  The indictment alleges that in or about June 2011, Hansen caused liens on the forfeited property to be filed with the Escambia County Court.  Intro. at ¶ 8.  And then, in the same court, in July 2011, it is alleged that Hansen filed a "Quiet Title- Equitable Action."  Intro. at ¶ 9.  By December 2011, Hansen's action has been removed from state to federal court, and this Court has dismissed Hansen's action.  Id.  Three months later, the United States secured a ruling from this Court that all liens filed by Hansen in the Escambia court were null and void.  Id. at ¶ 10.

There is nothing in the indictment alleging that Hovind and Hansen had any expectation that anyone would thereafter rely on any of their claims of ownership filed in the Escambia County Court.  To the contrary, it is well known that upon the filing of legal papers, the clerk to which they are submitted does not examine the contents of the pleadings or other documents, but

---

[1]  Indeed, there is only one allegation in the entire indictment that relates to the sale of any of the forfeited property and, even then, it is an allegation that one such property was successfully purchased by one "A.J." and a "warranty deed issued."  Intro. at ¶ 7.

reviews them only to ensure that they meet the formal requirements for filing.  Indeed, Hovind's and Hansen's effort on or about April 10 and 15 to file a "Claim of Lien Affidavit of Obligation" mailed to the Escambia County Court failed "[d]ue to an insufficient amount of fees being submitted with the documents."  Intro. at ¶ 14.  Not only that, but in light of the prior action by this Court, declaring that Hovind's and Hansen's court filings were null and void, neither Hovind nor Hansen could have had any expectation — much less intended — that potential purchasers of the forfeited property would rely on their substantive claims.  In short, "the government can[not] escape the burden of showing that some actual harm or injury was contemplated by the schemes."  See United States v. Regent Office Supply Co., Inc., 421 F. 2d 1174, 1180 (1970).

      C.      Resistance to This Court's Orders Does Not Constitute a Scheme to Defraud.

More than three months before the initial indictment was filed in this case, this Court issued, upon the Government's motion to show cause, an order "requiring Hovind to show cause why he should not be punished for criminal contempt."  United States v. Hovind at 3 (N.D. Fl. 2014) (No. 3:06cr83/MCR) (hereinafter "Hovind").  At issue was the Government's claim that, on May 29, 2013, Hovind had violated this Court's forfeiture order when he "filed lis pendens on four properties [that] were previously ordered forfeited to the Government."  Id. at 1.  In response to a Government motion to show cause why, this Court found that "probable cause exists to issue a criminal contempt notice and show cause order for Hovind's conduct of filing lis pendens encumbering the Government's property in violation of the permanent injunction order dated June 27, 2012."  Id. at 3.  To that end, this Court entered an order that "[c]riminal contempt proceedings ... be filed separately as a new cause action."  Id.

Thereafter, pursuant to this Court's order on October 11, 2014, an indictment was

returned, (i) charging Hovind not only with a violation of the criminal contempt statute (18 U.S.C. § 401(c)) for the May 2013 lis pendens filing, but also (ii) charging him with having committed mail fraud for that very filing. See Indict. Count Two. Further, Count I alleges that the filing of the lis pendens was pursuant to an overall conspiracy to commit mail fraud, including not only the May filing of the lis pendens, but an earlier April filing of a Claim of Lien Affidavit of Obligation on other forefeited properties. See Indict. at 9-10. Such activity that theretofore had been described by the Government as "criminal contempt," did, by this indictment, mushroom also into an alleged mail fraud conspiracy.

But, as the Eleventh Circuit has observed, "[t]here are limits to the types of schemes that the mail-fraud statute encompasses." Pendergraft at 1209. "[T]he word [fraud]," the Court stated, "still signifies 'the deprivation of something of value by trick, deceit, chicane, or overeaching.'" Id. at 1208. Conspicuously absent from the indictment is any specification how the filing of either the lis pendens or the Lien Affidavit was part of a scheme to defraud. To be sure, all of the mail fraud counts in the indictment "plead the statutory language," but as the Tenth Circuit has ruled, "'it is not sufficient to set forth the offence in the words of the statute unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" See United States v. Curtis, 506 F.2d 985, 991 (10th Cir. 1974).

The overall scheme alleged in this indictment is captured in Counts Three, Five and Six which assert various violations of 18 U.S.C. § 401(3). In Counts Three and Five, it is alleged that Hovind and Hansen "disobey[ed] resist[ed] a lawful process, decree, and command" ordering the "forfeit[ure] of ... Hovine's right, title and interest" in certain real estate by filing

various papers in both federal and state courts designed to "cloud title on said properties" without either proper legal advice or court permission. Indict. at 9 and 10-11. Count Six alleges that Hansen willfully and knowingly failed to comply with a Grand Jury Subpoena Duces Tecum directing him to provide certain evidence relevant to its investigation that led to this indictment. Indict. at 11-12. At bottom, this case is about alleged threatened obstruction of the sale of forfeited property at the alleged expense of the Government's interest in the revenues that would come from the sale of such property.

As the Eleventh Circuit has stated, the threat of legal action may create a "fear of economic loss," but (such) "fear is different from fraud." Pendergraft at 1208. Thus, the Court concluded that "[a] scheme to frighten is simply not criminalized by the mail-fraud statute." Id. Neither is a scheme to obstruct or resist the execution of this Court's order forfeiting the property a scheme to defraud. Rather the "gravamen" of the Government's indictment is obstruction of the judicial process, not the filing of fraudulent documents. As the U.S. District Court for the District of Connecticut has observed, "[a]ttempts to characterize abuse of process ... claims as mail or wire fraud ... have been rejected where the only allegedly fraudulent conduct relates to the filing of documents in litigation." See Daddona v. Gaudio, 156 F. Supp. 2d 153, 162 (D. Conn. 2000). This rule should be applied here as well. The actions as alleged may support a charge of criminal contempt on which a conviction has been obtained, but the allegations of this indictment charging mail fraud do not comport with common sense as evidenced by the failure of the jury to reach a verdict on any of the mail fraud counts.

## CONCLUSION

Every defendant, even an incarcerated inmate, has a right to assert all of his defenses in

court, without penalty for asserting those rights.  This is not a situation involving a prisoner was improperly using the courts to assert claims against prison officials in violation of the Prison Litigation Reform Act of 1995, 110 Stat. 1321.  The prisoner was not improperly using the courts to harass any citizen.  The only use of the courts alleged had to do with challenging the federal government's seizure and sale of property that had been owned by the ministry with which Hovind was associated.

All but one filing[2] were made, or attempted, in state court.  Intro. at ¶¶ 8-9, 14, 16-18. Without counsel, the defendants could have believed a state court could overturn the actions of a federal court on matters of property law.  Whether borne of frustration from years of incarceration, or a sense that property law and the law of nonprofit organizations was more a matter of state law than federal law, or based on a belief that the federal court had been unwilling to hear their position, lay defendants did nothing more than file some meritless papers in court in a futile effort to assert rights to real property that a federal court had previously ruled had been forfeited to the United States government, rights that a federal court had ruled to be "null and void."

It would be the rare lawyer who would believe that a state court would intercede to thwart a federal court order, but these filings were made by laymen.  However unwise this approach, it was not mail fraud, and the Government must not be allowed to criminalize (and potentially incarcerate for 20 years) a defendant for taking a legal approach which was ineffective, and did not in fact impede the government from its ability to sell the property.

As was the case in Pendergraft, "[t]he allegations in the indictment for conspiracy to

---

[2] The one filed in federal court was rejected.  Intro. at ¶ 11.

13

commit mail fraud and for the substantive offense[s] of mail fraud therefore fail to charge an offense as a matter of law." Pendergraft at 1209.

                PRO SE

                BY:    **/es/ Paul Hansen**
                        _____
                        Pro Se DEFENDANT

### Certificate of Service

I have casued this to be served on Tiffany Eggers at the US Attorney's office by e filing on May 12, 2015

                BY:    **/es/ Paul Hansen**
                        _____
                        Pro Se DEFENDANT